**BRYAN CAVE LEIGHTON PAISNER LLP**
David Harford, California Bar No. 270696
david.harford@bclplaw.com
Jina Shin, California Bar No. 339309
jina.shin@bclplaw.com
1920 Main Street, Suite 1000
Irvine, California  92614-7276
Telephone:   (949) 223-7000
Facsimile:    (949) 223-7100

Attorneys for Third-Party Defendants Money Mailer, LLC; and specially appearing defendant Eran Salu

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MITTERA ACQUISITION, LLC, a Iowa corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>MONEYMAILERUSA INCORPORATED, a Delaware corporation; LOCAL MARKETING SOLUTIONS GROUP, INC. a Illinois corporation; and Does 1 through 10, Inclusive,<br><br>            Defendants. | Case No. 8:23-CV-02315 CJC (JDEx)<br><br>**NOTICE OF MOTION AND MOTION OF THIRD-PARTY DEFENDANT ERAN SALU TO DISMISS LOCAL MARKETING SOLUTIONS GROUP, INC.'S THIRD-PARTY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Eran Salu; and [*Proposed*] Order]<br><br>Date:  March 25, 2024<br>Time:  1:30 p.m.<br>Place:  Courtroom 9B<br><br>Action Filed: December 7, 2023<br>Third-Party Complaint Filed: December 27, 2023<br>Trial Date: Not set. |
| LOCAL MARKETING SOLUTIONS GROUP, INC., an Illinois corporation,<br><br>            Third Party Plaintiff,<br><br>    v.<br><br>MONEY MAILER, LLC, a Missouri limited liability company; ERAN SALU, an individual; and ROES 1 through 20, Inclusive,<br><br>            Third Party Defendants. | |

NOTICE OF MOTION AND MOTION TO DISMISS THIRD-PARTY COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that on March 25, 2024, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 9B of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, CA 92701, specially appearing Third-Party Defendant ERAN SALU ("**Salu**"), will and hereby does move to dismiss the Complaint of Third-Party Plaintiff LOCAL MARKETING SOLUTIONS GROUP, INC. ("**LMSG**") in its entirety (the "**Motion**"). This Motion is made pursuant to the Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) on the following grounds:

 1. The Court has neither general nor specific personal jurisdiction over Salu pursuant to Rule 12(b)(2); and

 2. Each of LMSG's claims are barred by section 9.13 of the Asset Purchase Agreement and thus, LMSG cannot state facts sufficient to constitute causes of action against Salu pursuant to Rule 12(b)(6).

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 6, 2023 and February 14, 2023.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Eran Salu, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated: February 20, 2024              BRYAN CAVE LEIGHTON PAISNER LLP

                                      By: _/s/ David Harford_
                                          David Harford
                                      Attorney for Third-Party Defendants
                                      MONEY MAILER, LLC; and ERAN SALU

# **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | RELEVANT BACKGROUND | 2 |
| | A. Timeline of Events | 2 |
| | B. The Dispute | 2 |
| III. | LMSG FAILS TO SHOW A BASIS FOR PERSONAL JURISDICTION | 4 |
| | A. Legal Standard | 4 |
| | B. The Facts Show No Basis for General Jurisdiction | 5 |
| | C. Salu's Case-Specific Contacts Fail to Give Rise to the Minimum Contacts Sufficient to Authorize Specific Jurisdiction | 6 |
| |     1. Salu's Status as a Corporate Representative of Money Mailer Does Not Constitute Purposeful Availment in California. | 7 |
| |     2. LMSG's claim does not arise out of or relate to Salu's forum-related activities. | 10 |
| |     3. Jurisdiction over Salu would be unreasonable. | 11 |
| IV. | LMSG'S CLAIMS AGAINST SALU FAIL AS A MATTER OF LAW. | 12 |
| | A. Standard of Review | 12 |
| | B. The APA Bars Any Liability of Salu as an Officer of MM LLC. | 13 |
| V. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Aarotech Lab'ys, Inc.*,
  160 F.3d 1373 (Fed. Cir. 1998) .................................................................................. 8

*Am. Wave Machines, Inc. v. Surf Lagoons, Inc.*,
  2014 WL 10475281 (S.D. Cal. 2014) ..................................................................... 8, 9

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
  551 F.2d 784 (9th Cir. 1977) ...................................................................................... 5

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
  480 U.S. 102 (1987) ................................................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 13

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1988) .................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 13

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
  137 S. Ct. 1773 (2017) ......................................................................................... 5, 10

*Burger King Corp. v. Rudzewicz*,
  471 US 462 (1985) ................................................................................................... 11

*Calder v. Jones*,
  465 U.S. 783, 104 S. Ct. 1482 (1984) ........................................................................ 9

*Celtig, LLC v. Patey*,
  347 F. Supp. 3d 976 (D. Utah 2018) ........................................................................ 12

*Certified Bldg. Prod., Inc. v. N.L.R.B.*,
  528 F.2d 968 (9th Cir. 1976) ...................................................................................... 8

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) .................................................................................... 5

*Genetic Implant Sys. v. Core–Vent Corp.*,
 123 F.3d 1455 (Fed.Cir.1997) .................................................................................. 8

*Grober v. Mako Products, Inc.*,
 686 F3d 1335 (2012) ................................................................................................ 7

*Hoerler v. Superior Ct.*,
 85 Cal. App. 3d 533 (1978) ...................................................................................... 6

*J. McIntyre Machinery, Ltd. v. Nicastro*,
 564 US 873 (2011) .................................................................................................... 5

*Keeton v. Hustler Magazine, Inc.*,
 465 U.S. 770 (1984) .................................................................................................. 7

*Lightwire, LLC v. Anova Techs.-SMG Holdings, LLC*,
 2017 WL 3508730 (C.D. Cal. 2017) ........................................................................ 9

*Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*,
 2014 WL 1682811 (C.D. Cal. 2014) ........................................................................ 8

*McCollum v. Opulous*,
 2022 WL 17218072 (C.D. Cal. 2022) ...................................................................... 9

*Menken v. Emm*,
 503 F.3d 1050 (9th Cir. 2007) ................................................................................ 11

*Muckle v. Superior Ct.*,
 102 Cal. App. 4th 218 (2002) ................................................................................... 6

*of Oregon Cascade Corp. v. Harley*,
 720 F. App'x 326 (9th Cir. 2017) ........................................................................... 12

*Pebble Beach Co. v. Caddy*,
 453. F.3d 1151, 1155 (9th Cir. 2006) ...................................................................... 7

*Robertson v. Dean Witter Reynolds, Inc.*,
 749 F.2d 530 (9th Cir. 1984) .................................................................................. 13

*Scanlon v. Curtis Int'l, Ltd.*,
 465 F. Supp. 3d 1054 (E.D. Cal. 2020) ................................................................ 5, 7

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ................................................................................ 4, 5

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CALIFORNIA 92614-7276

iii

NOTICE OF MOTION AND MOTION TO DISMISS THIRD-PARTY COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)

*Sonora Diamond Corp. v. Superior Ct.*,
    83 Cal. App. 4th 523 (2000) ..................................................................................9

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................13

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................................6, 7

*Williams v. State of North Carolina*,
    325 US 226 (1945) ..................................................................................................5

*World-Wide Volkswagen v. Woodson*,
    444 U.S. 286 (1980) ..............................................................................................12

*Young v. Actions Semiconductor Co.*,
    386 F. App'x 623 (9th Cir. 2010) .........................................................................12

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ..................................................................................................4

Fed. R. Civ. P. 12(b)(6) ................................................................................................13

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3-D (2023) ..........................5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Third-Party Plaintiff Local Marketing Solutions Group, Inc. ("**LMSG**") seeks indemnification for the payment of debts regarding printing services provided by Plaintiff Mittera Acquisition, LLC ("**Mittera**") to MoneyMailerUSA ("**MM USA**"). The crux of LMSG's third-party complaint is that those debts were incurred by Third-Party Defendant Eran Salu ("**Salu**") while Salu was the officer and director of MM USA and, therefore, he should be hauled into this Court to be held personally liable for them. Salu's connection to this dispute arises solely out of his work as a corporate officer and the factually unsupported assertion that Salu represented that he would help MM USA negotiate the debts for which Mittera has sued LMSG.

LMSG, however, cannot assert any claims against Salu in this Court because Salu does not have sufficient minimum contacts with California such that the exercise of personal jurisdiction over him would be proper. LMSG concedes, as it must, that Salu "is an individual residing [] in Sarasota, Florida." (Third-Party Complaint ("**TPC**") at ¶ 11.) Salu's forum-related contacts, as LMSG admits, were those taken in his corporate capacity as an officer of MM USA, Money Mailer, LLC ("**MM LLC**"), and/or JAL Equity ("**JAL**"). Those contacts taken in his corporate capacity are barred from being attributed to Salu in his personal capacity by the fiduciary shield doctrine. And because no alter-ego theory applies and Salu did not otherwise commit a tortious act in California, those corporate contacts cannot be imputed to Salu. Without more, LMSG alleges no facts as to exactly how any of its claims stems from any activities of Salu in or directed at this forum. (*See generally* TPC.)

Nor can LMSG allege sufficient facts to state any of its claims because each of its claims are barred by the Parties' Asset Purchase Agreement ("**APA**"). Section 9.13 of the APA expressly limits enforceability of the APA to those "claim[s] or cause[s] of action based upon, arising out of, or related to the specific obligations set" forth in the APA. It further precludes enforceability against an officer of any party to the APA.

Here, each of LMSG's claims are related to the APA. Salu is not a named party to the APA. Moreover, Salu is an officer of MM LLC, a named party to the APA. Accordingly, LMSG's claims are barred and LMSG cannot allege any facts to save its claims.

LMSG has not and cannot meet its burden to establish a *prima facie* case of personal jurisdiction over Salu to withstand this Motion. Salu respectfully requests that the Court dismiss the Third Party Complaint against him.

In the alternative, if the Court believes that jurisdiction is proper, Salu respectfully requests that the Court dismiss the Third-Party Complaint for failure to state a claim because Section 9.13 of the APA completely bars LMSG's claims against him.

## II.   RELEVANT BACKGROUND

### A.   Timeline of Events

LMSG is a "holding company for businesses offering marketing solutions[.]" (TPC at ¶ 18.) In April 2020, LMSG acquired the Money Mailer business and operated it as "MM USA." (*Id.* at ¶ 19.) In June 2020, LMSG executed a guarantee of MM USA's debts. (*Id.* at ¶ 21.) On March 6, 2023, LMSG, MM USA, and MM LLC entered into the APA. (*Id.* at ¶¶ 24-25.) On September 12, 2023, Mittera filed the instant lawsuit against MM USA and LMSG. (*Id.* at ¶ 32.) LMSG claims that after it notified Salu of the lawsuit, Salu "has taken no action[.]" (*Id.* at ¶¶ 31, 33.) LMSG then filed its third-party complaint against Salu.

### B.   The Dispute

LMSG alleges that in August 2022, it began discussions with Salu regarding the potential sale of MM USA to Salu's company, JAL. (*Id.* at ¶ 22). LMSG claims that Salu "used threats of coercion and duress to force other directors and officers in MMUSA to resign so that he could install himself as MMUSA's sole officer and director[.]" (*Id.*) Salu's alleged "threats of coercion" are nothing more than his requests, on behalf of JAL and MM LLC, to receive compensation for millions of

dollars of business services rendered to MM USA by a JAL affiliate, ColorArt. (Declaration of Eran Salu ("**Salu Decl.**") at ¶¶ 13, 17.) Specifically, in lieu of full payment of a multi-million dollar debt owed to ColorArt, LMSG agreed to give JAL a minority interest in MM USA. (*Id.* at ¶¶ 14, 16.) Shortly thereafter, Salu proposed that MM USA should satisfy the outstanding debt owed to ColorArt by selling its assets to MM LLC. (*Id.* at ¶¶ 16-17.) While the Parties negotiated the proposed sale of MM USA's assets, Salu also proposed that he be appointed as the sole officer and director of MM USA. (*Id.* at ¶ 16.) The proposal was made given the lack of financial controls by LMSG and the mismanagement of the business by prior officers and directors. (*Id.* at ¶¶ 16-17.)

LMSG further claims that once Salu became MM USA's officer, Salu ordered printing services from Mittera – the very services for which Mittera seeks to hold LMSG liable for in the underlying litigation – and failed to disclose those debts to LMSG. (TPC at ¶¶ 23, 26-28.) LMSG contends that it is not liable for those undisclosed debts because they were incurred while Salu was MM USA's sole officer and director and LMSG "had no ability to direct MM USA to pay the resulting invoices." (*Id.* at ¶¶ 2, 4.) As for the other debts disclosed by LMSG to MM LLC, LMSG claims that it is not liable for those disclosed debts because MM LLC assumed them pursuant to the APA. (*Id.* at ¶¶ 24-25.)

Although MM LLC agreed to take on specific liabilities of MM USA pursuant to Section 1.2 of the APA, it did not assume the debts at issue. (Salu Decl. at ¶¶ 21-22; *see id.*, Ex. 1 (APA) at § 1.2.) The debts at issue, instead, were those "liabilities incurred in the normal and ordinary course of business of [LMSG] since December 31, 2022." (*Id.* at ¶¶ 22; *id.*, Ex. 1 (APA) at § 2.8.) Accordingly, those debts remained with MM USA and LMSG. (*Id.* ("Except for the Assumed Liabilities, all of the liabilities and obligations of the Seller and the Business, either accrued, absolute, contingent, or otherwise, shall remain the liabilities and obligations of the Seller from and after the Closing.").)

3
MEMORANDUM OF POINTS AND AUTHORITIES

LMSG also alleges that Salu "acknowledged to LMSG his obligation to address Mittera and other vendor debts [] and [that] he would negotiate with vendors to settle their claims for far less than face value after a period of delay." (TPC at ¶ 29.) Salu did not make any representations to LMSG that he would do so. (Salu Decl. at ¶ 27.) And if Salu had done so (he did not), those representations were made in his corporate capacity as an officer of MM LLC, not in his personal capacity. (*Id.* at ¶ 9.) Regardless, those alleged representations are inapposite given that the APA is a fully-integrated contract and those representations do not alter any of the rights and obligations arising from the APA. (*Id.*, Ex. 1 (APA) at § 9.4 (stating that the APA "constitutes the entire agreement between the Parties and supersedes all other agreements relating to the subject matter hereof. . . . No changes of, modification of, or additions to this Agreement shall be valid unless the same shall be in writing and signed by all Parties hereto.").)

Finally, LMSG's third-party complaint against Salu seeks indemnification from the underlying lawsuit against LMSG for failure to remit payment for printing services rendered by Mittera. (TPC at ¶ 2.) But Section 9.1 of the APA specifies that any claims "arising out of or related to" the APA against "may only be brought against the entities that are expressly named as Parties" and not against any "past, present or future. . . director, officer . . . employee . . . of any Party or its Affiliates[.]" (Salu Decl., Ex. 1 (APA).)

### III. LMSG FAILS TO SHOW A BASIS FOR PERSONAL JURISDICTION

#### A. Legal Standard

An action must be dismissed where a court lacks jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When ruling on a motion to dismiss pursuant to Federal Rule 12(b)(2) based on lack of personal jurisdiction, the Court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties.

It is the plaintiff that bears the burden of establishing personal jurisdiction over a defendant. *See e.g., Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th

4
MEMORANDUM OF POINTS AND AUTHORITIES

Cir. 2004) (affirming grant of motion to dismiss for lack of personal jurisdiction); *Scanlon v. Curtis Int'l, Ltd.,* 465 F. Supp. 3d 1054, 1060 (E.D. Cal. 2020) (collecting Ninth Circuit cases). To meet that burden, "a plaintiff cannot simply rest on the bare allegations of its complaint[,]" *Scanlon*, 465 F. Supp. 3d at 1061 (internal quotations and citation omitted), as a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Instead, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

There are two types of personal jurisdiction: (1) general, or all-purpose jurisdiction; and (2) specific, or suit-related jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017).

**B.    The Facts Show No Basis for General Jurisdiction**

There are only three bases upon which a court may exercise general jurisdiction over a defendant: (1) service within state; (2) domicile; and (3) consent. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 564 US 873, 880 (2011).

"Domicile" is the place where one resides with the intent to remain indefinitely. *See Williams v. State of North Carolina*, 325 US 226, 229 (1945). Because of the intent requirement, a person can only have one domicile at a time. Once established, domicile continues although the person is absent from the state [and it] continues until the person takes up residence elsewhere *with the requisite intent* to remain at the new residence indefinitely." Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3-D, *Traditional Bases for Personal Jurisdiction*, at ¶ 3:60 (2023). For a court to exercise general personal jurisdiction based on domicile, the defendant must be domiciled within the forum state **at the time the action is commenced**. *See J. McIntyre Machinery, Ltd.*, 564 US at 880. Therefore, "[p]ersonal jurisdiction cannot be based solely on the fact that a defendant had been domiciled in the forum state at some earlier time." Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3-D, *Traditional Bases for Personal Jurisdiction*,

at ¶ 3:62 (2023).

In *Muckle v. Superior Ct.*, the court held that California could not exercise general jurisdiction over a petitioner who had been domiciled in California three years prior to the commencement of the lawsuit. 102 Cal. App. 4th 218, 223, 225-26 (2002). The court concluded that the petitioner was domiciled in Georgia despite that the petitioner lived in both Georgia and California for over a ten-year period before moving to Georgia. *Id.* Because the petitioner was not domiciled in California, was not personally served with process in California, and did not consent to jurisdiction; no general jurisdiction could be asserted over him. *Id.* Similarly, in *Hoerler v. Superior Ct.*, the court held that a petitioner was not subject to jurisdiction because the petitioner was domiciled in Washington; notwithstanding that the petitioner had lived in California for approximately "fourteen years" prior to the commencement of the lawsuit. 85 Cal. App. 3d 533, 534 (1978).

Here, Salu was not served with the Third-Party Complaint in California. (Salu Decl., ¶ 24.) Nor did he consent to jurisdiction in California. (*Id.*) Moreover, Salu was not domiciled in California when this action was commenced on January 2, 2024. (*See id.* at ¶¶ 2-3, 6.) From 2015 and on, Salu has been residing in Florida and Missouri. (*Id.* at ¶¶ 2-3, *see also id.* at ¶ 6.) Similar to the *Muckle* petitioner who had moved from California to another state three years prior to the litigation, Salu has not been a California resident since moving to Florida nearly ten years ago. Because Salu is a nonresident, he is not subject to general jurisdiction in California.

### C. Salu's Case-Specific Contacts Fail to Give Rise to the Minimum Contacts Sufficient to Authorize Specific Jurisdiction

The analysis of whether a court may exercise specific personal jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations and citation omitted). "The mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* The

Supreme Court has emphasized that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties." *Id.* Thus, the necessary minimum contacts analysis requires that "the defendant's suit-related conduct must create a substantial connection with the forum State," and that "relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* (citation omitted).

The Ninth Circuit applies a three-part test to determine whether a court has specific personal jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*See e.g., Pebble Beach Co. v. Caddy*, 453. F.3d 1151, 1155 (9th Cir. 2006) (affirming dismissal); *Scanlon*, 465 F. Supp. 3d at 1065. The plaintiff bears the burden of establishing the first two prongs, and failure to prove either means that personal jurisdiction over the defendant does not lie in the forum. *Id.*

### 1. Salu's Status as a Corporate Representative of Money Mailer Does Not Constitute Purposeful Availment in California.

"The fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state." *Grober v. Mako Products, Inc.*, 686 F3d 1335, 1347 (2012) ("Appellants did not show that the [defendants] performed any relevant activities to establish general or specific personal jurisdiction."); *see, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13

(1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him"); *Genetic Implant Sys. v. Core–Vent Corp.*, 123 F.3d 1455, 1459–60 (Fed.Cir. 1997) (affirming finding of no personal jurisdiction over company president and CEO who had executed exclusive distributorship agreement on behalf of his company and individually); *Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*, 2014 WL 1682811, at *5 (C.D. Cal. 2014) (holding no specific jurisdiction over defendants who "have no contacts at all with California except for[] negotiating contracts" in their corporate capacities); *Am. Wave Machines, Inc. v. Surf Lagoons, Inc.*, 2014 WL 10475281, at *4-5 (S.D. Cal. 2014) (finding no specific jurisdiction as there was "no evidence or uncontroverted allegations of any personal involvement of [defendant]"); *3D Sys., Inc. v. Aarotech Lab'ys, Inc.,* 160 F.3d 1373, 1380 (Fed. Cir. 1998) (holding no jurisdiction because "[a]ll of Young's actions in relation to the state of California were taken in his role as an officer of Aaroflex. Young did not direct any activities individually toward California.").

LMSG concedes that the relevant conduct for Salu in this case arises out of his work "as MMUSA's sole officer and director, [in] authoriz[ing] the transactions that led to the underlying action." (TPC at ¶ 17; *see id.* at ¶¶ 39, 45, 57, 61, 67.) Salu's declaration confirms he communicated with MM USA, LMSG, and vendors providing printing services (like Plaintiff Mittera in this matter) in his corporate capacity. (*See* Salu Decl. at ¶¶ 5-12.) He also negotiated for the acquisition of MM USA and signed the Asset Purchase Agreement in his capacity as an officer of JAL. (*Id.* at ¶ 20.)

Because LMSG admits and Salu confirms that his relevant acts were undertaken in his capacity as a corporate officer of MM LLC, MM USA, and/or JAL, the fiduciary shield doctrine applies and there is no specific jurisdiction over Salu based on such acts.

**No alter-ego theory.** Notwithstanding the fiduciary shield doctrine, if a corporation is the alter ego of an individual defendant, courts may pierce the corporate veil jurisdictionally and impute the corporation's contacts onto the individual

defendant. *See Certified Bldg. Prod., Inc. v. N.L.R.B.*, 528 F.2d 968, 969 (9th Cir. 1976). "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538–39 (2000).

The Court's inquiry into an alter ego theory of jurisdiction may begin and end with an analysis of the pleading, which contains no assertion of an alter ego relationship between Salu and any relevant entity. There is no basis in fact to assert such a relationship because these entities are fully capitalized and properly separated from Salu personally. (Salu Decl., ¶¶ 11-12.) It would be inappropriate for LMSG to allege otherwise.

**Salu did not commit an intentional tort expressly aimed at California.**

Although a corporate officer's "contacts with California are not to be judged according to their employer's activities there, their status as employees does not insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 784, 104 S. Ct. 1482, 1484 (1984) (concluding jurisdiction was proper because of "intentional conduct in Florida [was] calculated to cause injury to respondent in California."); *see Am. Wave Machines, Inc.*, 2014 WL 10475281, at *6 (finding that a defendant "personally did not intentionally direct any actions at a California resident and therefore could not reasonably anticipate being haled into court").

LMSG claims that Salu "represented to LMSG that he would work with Mittera to settle the MMUSA debts[.]" (TPC at ¶ 17; *see id.* at ¶¶ 29, 63.) Without more, LMSG's conclusory allegations fail to demonstrate how Salu committed an intentional tort expressly aimed at California. *See Lightwire, LLC v. Anova Techs.-SMG Holdings, LLC,* 2017 WL 3508730, at *3 (C.D. Cal. 2017) (no personal jurisdiction where plaintiff relies on a "bare allegation" that a defendant "directed the Accused Product at California").

Moreover, Salu counters through his sworn declaration that he did not make any representations to address the outstanding debts in his personal capacity. (*See* Salu Decl., ¶¶ 9, 27.) To the extent any such representations were made, they were made in

9
MEMORANDUM OF POINTS AND AUTHORITIES

Salu's corporate capacity. (*Id.* at ¶ 9.) Since Salu did not personally commit any intentional tortious actions expressly aimed at California, the fiduciary shield doctrine applies and Salu is not subject to specific jurisdiction.

Finally, regardless of whether Salu made those representations, those representations are inapposite. The APA is a fully-integrated agreement. (*Id.* at Ex., 1 ("APA") at § 9.4 ("This Agreement . . . constitutes the entire agreement . . . and supersedes all other agreements relating to the subject matter hereof.").) As the purported representations are not a part of the APA, LMSG's contention that Salu made those representations and thereafter, allegedly failed to fulfill those representations cannot form a basis for his personal liability under the APA.

### 2. LMSG's claim does not arise out of or relate to Salu's forum-related activities.

For a court to exercise specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (emphasis in original). There must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*

The crux of LMSG's claim is that Salu incurred debts on behalf of MM LLC for printing services from Plaintiff which became due and unpaid. But the claim does not arise out of or relate to Salu's *own* forum-related activities. Instead, LMSG's claim arises out of those forum-related activities undertaken by Salu in his *corporate capacity* as an officer of MM USA, MM LLC, and JAL, and they do not provide a basis to establish specific jurisdiction over Salu.

Outside his corporate capacity, Salu's contacts with the forum state are unrelated to LMSG's claim. While a California resident **until 2015**, Salu personally owned property, maintained bank accounts, had a mailing address and telephone listing, and paid taxes in California. (Salu Decl. at ¶¶ 2-3.) He was also a plaintiff in a lawsuit which was not resolved until 2018, after Salu moved away from California. (*Id.*

at ¶ 4.) These prior contacts do not give rise to or relate to LMSG's indemnity claim.

Because there is no nexus between Salu's own forum-related contacts (taken in his personal capacity) and LMSG's claim, Salu is not subject to specific jurisdiction.

### 3. Jurisdiction over Salu would be unreasonable.

It must appear that the exercise of jurisdiction in the particular case would "comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 US 462, 477-78 (1985). In determining "reasonableness," courts may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (internal quotations omitted). "[I]n this circuit, the plaintiff's convenience is not of paramount importance." *Menken v. Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007).

The weaker a plaintiff's showing of purposeful availment and relatedness to forum-related acts, the less a defendant needs to show in terms of unreasonableness. *Burger King Corp.*, 471 US at 477-478. Irrespective of the sliding scale, "[j]urisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage in comparison' to his opponent." *Id.* at 478.

Though the Court's inquiry need not go further, exercising jurisdiction over Salu in California would offend traditional notions of fair play and substantial justice. This precludes the exercise of jurisdiction over Salu. The primary concern in any due process analysis is the burden, including the burden of appearance, on the defendant in being forced to litigate in a foreign forum. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980). Litigating a case in California would cause an unreasonable burden on Salu because he is domiciled in Florida. (Salu Decl. at ¶ 6.) Salu would be unfairly forced to litigate in a forum, of which he did not purposefully avail himself, far from home. *See e.g., Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S.

102, 114, (1987) (holding jurisdiction would be unfair, stating "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant. In the present case, however, the interests of the plaintiff and the forum in California's assertion of jurisdiction over Asahi are slight. All that remains is a claim for indemnification[.]"); *Young v. Actions Semiconductor Co.*, 386 F. App'x 623, 628 (9th Cir. 2010) (finding jurisdiction over defendant as unreasonable, stating that "although the remaining factors—the interest of the forum and the convenience and effectiveness of relief available to the appellants—weigh in favor of jurisdiction, '[i]n this circuit, the plaintiff's convenience is not of paramount importance.'"); *Morris on behalf of Oregon Cascade Corp. v. Harley,* 720 F. App'x 326, 328 (9th Cir. 2017) (concluding jurisdiction would be unreasonable since there was no purposeful availment and the lease agreement was not signed in the forum and contained a dispute-resolution clause mandating resolution elsewhere); *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 990 (D. Utah 2018) (holding personal jurisdiction would be unreasonable as "Edwards resides in Tennessee, and the burden on Edwards to travel to Utah would be high" and "[a]ny contact he has had with Utah **has been in his role as CEO of Celtig** and **Celtig is a party to the suit. Thus, naming Edwards as a defendant in his personal capacity is unnecessary**." (emphasis added).).

Dismissal is warranted.

IV. **LMSG'S CLAIMS AGAINST SALU FAIL AS A MATTER OF LAW.**

A. **Standard of Review**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

533-34 (9th Cir. 1984). While the Court must assume the complaint's factual allegations are true, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court is also not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl.*, 550 U.S. at 555, 557).

On a motion to dismiss, the Court may also properly consider other documents "if the documents' 'authenticity … is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court need not convert a motion to dismiss into summary judgment if it considers such materials. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B. The APA Bars Any Liability of Salu as an Officer of MM LLC.

Section 9.13 of the APA states:

> This Agreement may only be enforced against, and any claim or cause of action based upon, arising out of, or related to this Agreement **may only be brought against the entities that are expressly named as Parties** and then only with respect to the specific obligations set forth herein with respect to such Party. . . . **[N]o past, present or future Affiliate of any Party, or past, present or future director, officer, [] employee . . . of any Party or its Affiliates, shall have any liability for any obligations or liabilities of any Party under this Agreement or for any claim based on, in respect of, or by reason of, the transactions contemplated hereby**.

Salu Decl., Ex. 1 (APA).[1]

---

[1] The APA, which Salu authenticates in his declaration, is also judicially noticeable pursuant Federal Rule of Evidence 201 because LMSG relies upon and quotes extensively from the document in its pleading. (*See e.g.* TPC ¶¶ 3, 24, 25, 27, 29, 37, 41 & 43.) The Court's consideration of the APA does not require converting this motion under Rule 12(b)(6) into a summary judgment motion.

13
MEMORANDUM OF POINTS AND AUTHORITIES

LMSG's claims against Salu "aris[e] out of, or [are] related to" the APA. (*See generally*, TPC.) Salu is not a named party to the APA but an officer of a party to the APA - MM LLC. Thus, LMSG is limited to enforcing the APA only against the named parties of the APA – MM USA, MM LLC, and Al Croke. Because LMSG is contractually precluded from alleging any claims arising out of or related to the APA against Salu, and because LMSG does not make any claims inapposite to the APA, LMSG cannot allege any facts to state its claims. Dismissal is warranted.

## V.  CONCLUSION

LMSG's claims against Salu arise solely out of its allegations that his entities allegedly failed to honor a contractual agreement—the APA—under which LMSG agreed Salu should bear no personal responsibility. Despite this, LMSG has attempted to personally drag Salu across the country to court to a foreign jurisdiction that has nothing to do with the parties' negotiation or performance of the APA.

WHEREFORE, Sale respectfully requests that this Court grant his Motion and enter an order dismissing the Third-Party Complaint against Salu for lack of personal jurisdiction. In the alternative, Salu respectfully requests that this Court dismiss the Third-Party Complaint for failure to state a claim, without leave to amend.

Dated: February 20, 2024　　　　　　　　　BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ *David Harford*
　　　David Harford
　　　Attorney for Third-Party Defendants
　　　MONEY MAILER, LLC; and ERAN SALU

### Certificate of Compliance with L.R. 11-6.1

The undersigned, counsel of record for Third Party Defendants, certifies that this brief contains 4,784 words, which: complies with the word limit of L.R. 11-6.1. February 20, 2024

_David Harford_
David Harford