Christopher Cianci (SBN 216675)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone: 310.556.8861
Facsimile: 310.553.2165
CCianci@ebglaw.com; cemail@ebglaw.com

Attorneys for Defendant
MONEY MAILER LLC

# UNITED STATES CENTRAL DISTRICT COURT OF CALIFORNIA

## SOUTHERN DIVISION, SANTA ANA

| | |
|---|---|
| MITTERA ACQUISITION, LLC, an Iowa Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MONEYMAILERUSA INCORPORATED, a Delaware corporation; LOCAL MARKETING SOLUTIONS GROUP, INC., an Illinois corporation; MONEY MAILER, LLC, a Missouri Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:23-CV-02315-MRA-JDEx<br><br>*Judge: Hon. Monica Ramirez Almadani*<br>*Courtroom: 10B*<br><br>*Magistrate Judge: Hon. John D. Early*<br>*Courtroom: 6A*<br><br>**DEFENDANT MONEY MAILER LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[Separate Statement; Compendium of Evidence, Declaration of Christopher C. Cianci, and Declaration of Eran Salu; and [Proposed Order] Filed Herewith]*<br><br>Date:      June 9, 2025<br>Time:     1:30 p.m. PST<br>Ctrm:     10B<br>Courthouse:   350 W. 1st St.<br>                       Los Angeles, CA 90012<br><br>State Action filed: September 12, 2023<br>Removal date:       December 7, 2023<br>FAC filed:                November 12, 2024 |

-1-

# NOTICE OF MOTION

**TO THE COURT AND TO PLAINTIFF AND ITS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on June 9, 2025, at 1:30 p.m. PST, or as soon thereafter as this matter may be heard, in Courtroom 10B of the above-entitled Court, located at 350 W. 1st St., Los Angeles, CA 90012, Defendant Money Mailer LLC ("Defendant" or "MMLLC") will, and hereby does, move this Court for an order granting summary judgment, or, in the alternative, partial summary judgment, on each claim asserted against MMLLC in the First Amended Complaint ("FAC") filed on November 12, 2024 [Dkt. 51].

This Motion is based upon the grounds that there is no genuine dispute as to any material fact and that MMLLC is entitled to judgment as a matter of law with respect to all claims against it, mainly:

(1) Defendant is entitled to judgment on all of Plaintiff's causes of action for breach of contract as a matter of law because there does not exist a contract between MMLLC and Plaintiff, and there can be no breach of any contract.

(2) Defendant is entitled to judgment on Plaintiff's cause of action for common counts as a matter of law because it is derivative of Plaintiff's causes of action for breach of contract, and Plaintiff cannot prove its breach of contract claims against MMLLC.

This Motion is made following the conference of counsel pursuant to Local Rule ("L.R.") 7-3. On April 21, 2025, counsel for MMLLC sent counsel for Plaintiff a comprehensive meet and confer letter inviting further discussion regarding the dispositive issues presented in this Motion. (*See* Cianci Decl., ¶ 3, **Exhibit B**, April 21, 2025 Letter to Plaintiff's Counsel.) While counsel for Plaintiff acknowledged receipt of the letter, she did not substantively respond. (*Ibid.*)

This Motion will be made upon the grounds that no genuine issue of material fact exists, and summary judgment is therefore appropriate. This motion is based on

this Notice of Motion, the Memorandum of Points and Authorities in support thereof, Separate Statement of Undisputed Material Facts, and the Declarations of Eran Salu and Christopher C. Cianci, filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated: April 28, 2025

EPSTEIN BECKER & GREEN, P.C.

By: _____
Christopher C. Cianci
Attorneys for Defendant
MONEY MAILER LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In its First Amended Complaint ("FAC"), Plaintiff Mittera Acquisition, LLC ("Plaintiff" or "Mittera") alleges that it entered into a written agreement with MoneyMailerUSA Incorporated ("MMUSA"), in which Plaintiff agreed to perform printing services for MMUSA and MMUSA agreed to pay for the printing services. Plaintiff alleges MMUSA failed to pay for some of the printing services provided, and Plaintiff seeks to hold MMUSA liable for the alleged debt as a result. Plaintiff also alleges that MMUSA's shareholder, Local Marketing Solutions Group, Inc. ("LMSG"), signed a written guaranty for the debt owed to Plaintiff from MMUSA.

Plaintiff's case is against MMUSA and LMSG. Plaintiff cannot assert any of its claims for breach of written contract or common counts against third-party, Defendant Money Mailer LLC ("Defendant" or "MMLLC".) It is undisputed that no contracts exist between Plaintiff and MMLLC for any of the alleged debt owed to Plaintiff. It is undisputed that no printing services were provided by Plaintiff to MMLLC for which any of the alleged debt owed to Plaintiff was incurred. It is undisputed that MMLLC never became indebted to Plaintiff in the last four years on an open book account for money due or for work, labor, services, and/or materials rendered at the special instance and request of MMLLC. Plaintiff's claims fail against MMLLC as a matter of law.

In order to attempt to hold MMLLC liable for what is clearly alleged debt of MMUSA and/or LMSG, Plaintiff alleges that MMLLC is a "continuation" of MMUSA, acting as its "successor corporation." However, Plaintiff cannot make this showing. Pursuant to an asset purchase agreement, MMLLC did purchase assets of MMUSA and assumed certain liabilities. It is undisputed though that (1) MMLLC did not expressly assume the alleged debt owed to Plaintiff by MMUSA and/or LMSG and (2) adequate consideration (i.e., $1.2 million) was paid for

MMUSA's assets. Plaintiff will be unable to prove MMLLC was MMUSA's "successor corporation."

For all of the reasons set forth herein, Defendant MMLLC respectfully requests this Court grant this Motion and enter summary judgment in favor of MMLLC on all claims asserted against it by Plaintiff in the FAC.

## II.  FACTUAL BACKGROUND

### A.  The Parties.

Plaintiff alleges it is an Iowa corporation and is successor-in-interest to TREND Offset Printing Services, Inc. ("TREND"). (Cianci Decl., ¶ 2, **Exhibit A**, FAC, ¶ 1.)

MMUSA was formed on April 14, 2020 as a Delaware corporation. (Salu Decl., ¶ 3.)

LMSG is an Illinois corporation and was the sole shareholder of MMUSA at incorporation, owning 100 shares. (Salu Decl., ¶ 3.)

MMLCC was formed on February 17, 2023 as a Missouri limited liability company. (Salu Decl., ¶ 3.)

### B.  Plaintiff's Allegations of Debt Incurred by MMUSA.

Plaintiff alleges that on or about May 8, 2020, a written agreement was entered into between Plaintiff and MMUSA, in the form of an application for credit. Plaintiff agreed to perform printing services for MMUSA and MMUSA agreed to pay for the printing services. (FAC, ¶ 13.) Plaintiff alleges that from January 2023 through in or about April 2023, Plaintiff performed printing services for MMUSA, in the amount of $482,417.99. (FAC, ¶ 15.)

### C.  MMLLC's Purchase of Assets of MMUSA.

On March 6, 2023, MMLLC entered into an Asset Purchase Agreement (the "APA") with MMUSA and LMSG. (UF 1.) Pursuant to the APA, MMLLC was the purchaser of assets of MMUSA and assumed certain liabilities. (UF 2.)

Section 1.2(a) of the APA states that "the Seller [i.e., MMUSA] shall assign and transfer to Buyer [i.e., MMLLC] and Buyer shall assume responsibility for, (i) the unperformed balance of each of the customer contracts or other agreements to which the Seller is a party and which are listed or described on Schedule 1.2(a)(i) (the 'Acquired Contracts'), to the extent such obligations are applicable to, and accrue with respect to, periods following the Closing and are accompanied by a correlated duty of payment on the part of the other party(ies) thereto, and (ii) those liabilities listed on Schedule 1.2(a)(ii) hereto (collectively, the 'Assumed Liabilities')." (UF 3.)

Section 1.2(a) of the APA goes on to state that "**[e]xcept as expressly provided in this Section 1.2(a), Buyer shall not assume or become liable for and shall not be obligated to pay or satisfy any obligation, debt or liability whatsoever, contingent or otherwise,** including, without limitation, any current liabilities owed to any shareholder of the Seller or any affiliate of any shareholder of the Seller (including, in either instance, LMSG), any Tax liability of the Seller (including, for the avoidance of doubt, Seller's liability for the Taxes of any other person), or any Seller Transaction Expenses." (UF 4 (emphasis added).)

No obligation, debt, or liability owed to Plaintiff or to TREND is included on Schedules 1.2(a)(i) or (ii) to the APA. (UF 5.)

Section 1.3 of the APA states the purchase price of One Million Two Hundred Thousand Dollars ($1,200,000.00). (UF 6.)

Section 2.8 of the APA states that "[t]he Seller has no liabilities or obligations whatsoever in connection with the Business, either accrued, absolute, contingent or otherwise, and neither the Seller nor LMSG knows of any basis for any claim against the Seller for any liability or obligation relating to the Business, except (a) to the extent specifically set forth on Schedule 2.8, or provided for in the Financial Statements, and (b) liabilities incurred in the normal and ordinary course of business of the Seller since December 31, 2022. **Except for the Assumed**

**Liabilities, all of the liabilities and obligations of the Seller and the Business, either accrued, absolute, contingent or otherwise, shall remain the liabilities and obligations of the Seller from and after the Closing.**" (UF 7 (emphasis added).)

No contracts exist between Plaintiff or TREND, on the one hand, and MMLLC, on the other hand, for any of the alleged debt owed to Plaintiff. (UF 8.) No credit was ever extended from Plaintiff or TREND to MMLLC for any of the alleged debt owed to Plaintiff. (UF 9.) No printing services were provided by Plaintiff or TREND to MMLLC for which any of the alleged debt owed to Plaintiff was incurred. (UF 10.) MMLLC never became indebted for any of the alleged debt owed to Plaintiff or TREND in the last four years on an open book account for money due or for work, labor, services, and/or materials rendered at the special instance and request of MMLLC. (UF 11.)

### III.   ARGUMENT

#### A.   Legal Standard.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56(a).) A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.)

The burden of establishing the absence of a genuine issue of material fact lies with the moving party. (*See Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322–23.) Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. (*See id.* at p. 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.* (1986) 475 U.S. 574, 586.) The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved

in favor of either party." (*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.* (9th Cir. 1987) 818 F.2d 1466, 1468 (quoting *Anderson, supra,* 477 U.S. at p. 250) (emphasis omitted).) Provided the moving party has satisfied its burden, the Court should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. (*Celotex, supra,* 477 U.S. at pp. 322–23.)

"The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. . . . The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced." (*Herbalife Int'l of Am., Inc. v. E. Computer Exch., Inc.* (C.D. Cal. 2024) 723 F.Supp.3d 888, 898.)

### B. Defendant MMLLC Is Entitled to Summary Judgment on the FAC's First and Third through Seventh Causes of Action for Breach of Written Contract.

MMLLC is entitled to judgment as a matter of law on the FAC's First and Third through Seventh Causes of Action for Breach of Written Contract.

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. (*Oasis W. Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

"[U]nder [. . .] California law, a plaintiff cannot maintain a breach of contract claim against an entity who is not a party to the contract." (*Barnhart v. Points Dev. US Ltd.* (C.D. Cal. May 25, 2016) No. 216CV02516CASEX, 2016 WL 3041036, at *3; *Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n* (1993) 12 Cal.App.4th 1354, 1359 ("[Plaintiff] cannot assert a claim for breach of contract against one who is not a party to the contract."); *Conder v. Home Savings of Am.* (C.D. Cal. 2010) 680 F.

- 5 -

DEFENDANT'S MOTION SUMMARY JUDGMENT
8:23-CV-02315-MRA-JDEX

Supp. 2d 1168, 1174 (applying California law and granting defendant's motion to dismiss breach of contract claim against someone who is not a patty to the contract).)

Here, it is undisputed that there was never a contract between Plaintiff and MMLLC. The only written contracts alleged by Plaintiff were those between Plaintiff and Defendant MMUSA. All of the written contracts Plaintiff seeks to enforce are allegedly written agreements made with MMUSA in which MMUSA agreed to pay for printing services provided by TREND (which Plaintiff alleges is Plaintiff's predecessor) or written agreements in which Plaintiff agreed to provide printing services to MMUSA and MMUSA agreed to pay for the printing services. Plaintiff cannot establish the existence of any written contract between Plaintiff, or TREND, and MMLLC.

Plaintiff's First and Third through Seventh Causes of Action fail as a matter of law.

### C. Defendant MMLLC Is Entitled to Summary Judgment on the FAC's Second Cause of Action for Common Counts.

MMLLC is also entitled to judgment as a matter of law on the FAC's Second Cause of Action for Common Counts – Open Book Account. The "essential allegations of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.'" (*Farmers Ins. Exch. v. Zerin* (1997) 53 Cal.App.4th 445, 460 (citation omitted).) "A common count is not a specific cause of action, however; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.) "When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, . . . [the] common count must stand or fall with his first cause of action." (*Id.* at pp. 394-95)

Plaintiff's Common Counts claim is entirely premised on the Breach of Contract claims. Since there is no genuine dispute as to any material fact with respect

to the Breach of Contract claims and Plaintiff cannot prove those claims, Plaintiff likewise cannot prove its claim for Common Counts. Regardless, Plaintiff cannot show any indebtedness owed by MMLLC to either Plaintiff or TREND.

Plaintiff's Second Cause of Action fails as a matter of law.

### D. Plaintiff Cannot Make the Requisite Showing That Defendant MMLLC Is A Successor Corporation Such That It Is Liable for the Alleged Debt of Defendant MMUSA.

In order to attempt to hold MMLLC liable for what is clearly alleged debt of MMUSA, Plaintiff alleges that MMLLC is a "continuation" of MMUSA, acting as its "successor corporation." However, Plaintiff cannot make this showing.

"[A] successor company has liability for a predecessor's actions if: (1) the successor expressly or impliedly agrees to assume the subject liabilities . . . , (2) the transaction amounts to a consolidation or merger of the successor and the predecessor, (3) the successor is a mere continuation of the predecessor, or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts." (*CenterPoint Energy, Inc. v. Superior Ct.* (2007) 157 Cal.App.4th 1101, 1120.) "The crucial factor in determining whether a corporate acquisition constitutes either a de facto merger or a mere continuation is the same: whether adequate cash consideration was paid for the predecessor corporation's assets." (*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 625.)

Here, MMUSA, LMSG, and MMLLC entered into the March 6, 2023 APA in which MMLLC was the purchaser of assets of MMUSA and assumed certain liabilities, all for valuable consideration, mainly $1,200,000.

Based on the plain reading of the contractual language, the debt allegedly owed to Plaintiff falls outside of the APA's definition of Assumed Liabilities. Section 1.2(a) states that "the Seller shall assign and transfer to Buyer and Buyer shall assume responsibility for, (i) the unperformed balance of each of the customer contracts or other agreements to which the Seller is a party and which are listed or described on

1  Schedule 1.2(a)(i) (the 'Acquired Contracts'), to the extent such obligations are
2  applicable to, and accrue with respect to, periods following the Closing and are
3  accompanied by a correlated duty of payment on the part of the other party(ies)
4  thereto, and (ii) those liabilities listed on Schedule 1.2(a)(ii) hereto (collectively, the
5  'Assumed Liabilities')."

Plaintiff's alleged owed debt (the "Mittera Debt") is not included on Schedules 1.2(a)(i) or (ii) and therefore falls outside of the definition of Assumed Liabilities under the APA. As such, MMLLC did not assume and has no responsibility for the Mittera Debt pursuant to Section 1.2(a). Likewise, Section 1.2(a) makes clear that "[e]xcept as expressly provided in this Section 1.2(a), Buyer shall not assume or become liable for and shall not be obligated to pay or satisfy any obligation, debt or liability [of LMSG or MMUSA] whatsoever, contingent or otherwise." The Mittera Debt was not included in the definition of Assumed Liabilities.

"[T]he intention of the parties is to be ascertained from the writing alone." (Cal. Civ. Code § 1639; Cal. Civ. Code § 1625 ("The execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."); *see also Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 344 ("[T]he act of embodying the complete terms of an agreement in a writing (the 'integration') *becomes the contract of the parties* ... [E]xtrinsic evidence cannot be admitted to prove what the agreement was, not for any of the usual reasons for exclusion of evidence, but because as a matter of law the agreement is the writing itself. . . . Such evidence is legally irrelevant and cannot support a judgment.").) Further, "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning[.]" (Cal. Civ. Code § 1644.)

The Mittera Debt is LMSG and MMUSA's responsibility under Section 2.8 of the APA, which states that "[e]xcept for the Assumed Liabilities, all of the liabilities and obligations of the Seller and the Business, either accrued, absolute, contingent or

otherwise, shall remain the liabilities and obligations of the Seller from and after the Closing." Because the Mittera Debt is not an Assumed Liability under Schedules 1.2(a)(i) or (ii), such debt remains the liability of MMUSA and/or LMSG, and are not the responsibility of MMLLC.

In sum, it is undisputed that (1) MMLLC did not expressly assume the alleged debt of MMUSA and/or LMSG to Plaintiff and (2) adequate consideration (i.e., $1.2 million) was paid for MMUSA's assets. Plaintiff will be unable to prove MMLLC was MMUSA's "successor corporation."

## IV.  CONCLUSION

In light of all of the foregoing, Defendant MMLLC submits that Plaintiff has failed to carry its burden of setting forth admissible evidence demonstrating that Plaintiff is entitled to relief on any of its claims and, therefore, this motion for summary judgment should be granted.

Dated:  April 28, 2025

EPSTEIN BECKER & GREEN, P.C.

By: _____

Christopher C. Cianci

Attorneys for Defendant
MONEY MAILER LLC

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for MONEY MAILER LLC, certifies that this brief contains **3,177** words, which complies with the word limit of L.R. 11-6.1.

Dated: April 28, 2025

EPSTEIN BECKER & GREEN, P.C.

By: _/s/_

Christopher C. Cianci

Attorneys for Defendant
MONEY MAILER LLC